356 P.2d 279

Albert A. CECIL, Plaintiff and Respondent,

v.

LaVera C. CECIL, Eliza C. Butterfield, as Guardian of the person of LaVera C. Cecil and Walker Bank & Trust Company, a corporation, as Guardian of the Estate of LaVera C. Cecil, an incompetent, Defendants and Appellants.

No. 9229.

Supreme Court of Utah.

Oct. 27, 1960.

2. Hallinan v. Prindle, 220 Cal. 46, 29 P.2d 202.

Romney, Boyer & Ronnow, Salt Lake City, for appellants.

Gustin, Richards & Mattsson, Salt Lake City, for respondent.

WADE, Justice.

This is an appeal from a judgment granting the petition of Albert A. Cecil, respondent herein, for modification of a divorce decree to terminate his obligation to pay alimony for LaVera C. Cecil, his former wife, because she had remarried. The court granted the petition and also a judgment for the amounts paid as alimony from the date of her remarriage.

The facts as disclosed by the record show that Albert A. Cecil commenced an action in June, 1953, for divorce from LaVera C. Cecil, to whom he was married on May 4, 1935. During the pendency of this action proceedings were commenced wherein LaVera C. Cecil was declared an incompetent,

and Eliza C. Butterfield, her mother, was appointed the guardian of her person, and the Walker Bank & Trust Company was appointed the guardian of her estate. After these proceedings the guardians were made parties to the divorce action and a decree was entered granting Albert A. Cecil a divorce and providing for the disposition of certain real and personal property and for the payment by Albert A. Cecil of $85 per month as alimony for LaVera C. Cecil. Albert A. Cecil complied with the provisions of the divorce decree and made his alimony payments fairly regularly until he learned in June, 1959, that a marriage had been solemnized between his former wife and a Mr. Darwin C. Richardson in Elko, Nevada, on January 6, 1959. Upon learning of this marriage, Albert A. Cecil filed the petition for modification of the divorce decree to terminate his liability for the alimony payments decreed therein. Appellants resisted this petition on the ground that an annulment of the purported marriage of LaVera C. Cecil and Darwin C. Richardson had been decreed because La-Vera C. Cecil was incompetent and incapable of entering into her marriage contract with Darwin C. Richardson.

At the hearing on the petition for modification of the divorce decree the evidence disclosed that LaVera C. Cecil had been committed for treatment to the Utah State Hospital in May, 1952, and released for visitation purposes in October, 1952, and finally discharged in 1954. That after her divorce from Mr. Cecil she collected her alimony from the Walker Bank & Trust Company and took care of herself with no control or interference from her mother, who was the guardian of her person. She did not live with her mother. On a visit to her mother she indicated she was contemplating marriage and was told not to do so. She paid no heed to her mother, but within a few weeks went through a marriage ceremony with Mr. Richardson in Elko, Nevada. Before she went through the marriage ceremony she gave consideration to Mr. Richardson's financial ability to support her. She lived with him but a short time when she consulted with her attorney about a divorce. Although she had grounds for a divorce, her attorney deemed it for her best interests to apply for an annulment so that her right to alimony payments from Mr. Cecil might continue.

The court found that there were no exceptional circumstances in favor of La-Vera Cecil which would warrant the continuance of alimony payments in view of her marriage to Mr. Richardson and granted the petition of respondent for the modification.

It is appellants' contention that the annulment declared LaVera's marriage to Mr. Richardson to be null and void from its inception, and since the purpose of the annulment proceedings was to fix the status of LaVera C. Cecil, the judgment as to

such status was one in rem, binding upon the world and not subject to collateral attack.

██ It is to be kept in mind that the proceeding before the court in the instant case was a petition for modification of a divorce decree. In such a proceeding the court has to determine whether there are changed circumstances which merit such modification. Even though it be conceded that the annulment cannot be collaterally attacked, nevertheless what effect an annulment has on a divorced husband's obligation to continue alimony payments to his former wife is to be determined by what a court could reasonably find is equitable under the facts and circumstances. While it is implicit in a divorce decree that alimony ceases upon the remarriage of the party entitled to alimony in the absence of exceptional circumstances which would make such a result "so unconscionable or inequitable that the court, under its equitable powers would decree that the wife does not lose her right to alimony upon remarriage,"[1] such is not implicit in the case of an annulment. The reason it is implicit in the case of a remarriage that the divorced wife's right to alimony is automatically cut off is that by her remarriage the wife has chosen to look to her second husband for support, and such husband is legally bound to support her, and therefore,

it would be inequitable for her to obtain the right to support from two sources. However, in the case of an annulment, the judgment is that there was never a valid marriage. There being no valid marriage, the purported wife would not be entitled to support from the purported husband, in the absence of a statute allowing alimony in case of annulment.

In determining the effect of an annulment on the wife's right to alimony from the first husband, despite the remarriage, (whether such right to alimony was based on a divorce decree or on an agreement to pay alimony until remarriage) the courts appear to have been greatly influenced by a public policy of ensuring to a wife a legal right to support. In other words, in the case of an annulment the effect on alimony payments unlike that in the case of a divorce has depended upon what courts have deemed equitable under the circumstances.[2]

██ LaVera Cecil lived with her purported second husband but a few weeks before she separated from him. It does not appear from the record that he ever supported her. She has a case history of mental infirmity, and her annulment was granted on the ground that she had no mental capacity to enter into the purported second marriage. Under such circumstances it would be unjust to deprive her of the

---

1. Austad v. Austad, 2 Utah 2d 49, 269 P.2d 284, 48 A.L.R.2d 256.

2. Annotation 48 A.L.R.2d p. 296, Sec. 9, and Annotation 48 A.L.R.2d, p. 329, Sec. 10.

support of her first husband, who, after all, was obliged to support her, and her attempted marriage did not adversely alter or change his circumstances so that it would be inequitable to require him to continue his alimony payments. In the absence of such changed circumstances, the court erred in granting respondent's petition for modification of the divorce decree and the judgment for the amounts paid by respondent before he discovered her remarriage.

Reversed. No costs awarded.

CROCKETT, C. J., and HENRIOD, McDONOUGH and CALLISTER, JJ., concur.